All right. We are going to call our second case for the morning. Our Liberty Insurance v. Cocrystal, appellate number 22-2242. Thank you. Take your time. Okay. Good morning, your honors. May it please the court, my name is Tamara Bruno, and I'm here representing Cocrystal Pharma, Inc. And I'd like to reserve five minutes for a bubble. Granted. Your honors, this case is about how a director's and officer's insurance policy applies to a government agency investigating mixed claims that include at least some covered conduct and then the impact that has on subsequent shareholder lawsuits. What evidence in this record would tell us that the SEC was looking at Cocrystal? There are a few things, your honor. The first are the SEC's subpoena to Cocrystal itself. And this is typically what courts look at when they're determining the scope of a government investigation for purposes of D&O coverage and what's being alleged by the agency. So in the SEC's subpoena, first of all, they asked for documents and information concerning more than a year after the merger. So that includes a significant amount of period after Biozone no longer existed and we are now just Cocrystal. Where did you argue in your district court summary judgment briefing that the implication from that is that post-merger activity was also being investigated? Well, at the district court level, that was Cocrystal's primary argument, that the actual requests that were included in the SEC investigation were allegations that triggered coverage here. I wouldn't say that was your primary argument. I went back looking at your briefing. Where specifically do you make that argument? Well, that is included in the opening brief. Well, I can get that citation for you, your honor. The other piece of evidence is this January 25th email. And it's a good email for you, but you didn't cite it to the district court. Well, we did cite that to the district court. In your summary judgment briefing? Where? In the summary judgment briefing docket 87 pages 8 and 19 to 20. At the district court level, Cocrystal pointed to the declaration by Mr. Johnson Green, who was counsel for Cocrystal in the actual investigation. And that included the email as an attachment. You mentioned the Green affidavit, but you didn't point to the email as saying, hey, we're under investigation too. Well, I believe in that citation they actually do, your honor. They pointed to the declaration and said, well, Cocrystal pointed to the declaration and said, look, this is why we know that Cocrystal, in addition to Biozone, was being investigated. So I'm going to go back and look at pages 8 and 19 to 20 and how it cites it. But, you know, federal civil procedure 56C3 says the court need consider only the cited materials. So if we find that that was not specifically done, why should we reverse because of something that wasn't cited, if the district court wasn't required to consider it in the first place? It could, but we don't put them on a truffle hunting expedition through the district court record. Sure, your honor. Well, first, I'll say that that citation is there. But if that weren't there, you'd still need to reverse on summary judgment because the court found that there were no allegations at all in the SEC investigation that involved Cocrystal so as to trigger coverage under this DNO policy. And that we get from the SEC subpoena alone. So that's how you would, if the email was excluded, so you couldn't lay a foundation at trial. The subpoena is what you'd be leaning on for notice that Cocrystal's activities were being looked at by the SEC, regardless of what happened with this SEC enforcement action. Absolutely. And that's typically what all the targets of investigations get, is they get the requests in the subpoena that actually tell them what they're being investigated for. It's actually unusual. So if you look at like the Syracuse case, all they had in that case were what was the grand jury requesting Syracuse produce. That's all the information they had to determine what the allegations were, i.e., what the government agency was investigating. And so here we have that. Not only is the time period, but also specific requests. I mean, there were requests asking for information relating to insider trades of stock after Biozone became Cocrystal. Well, that can only be about conduct by Cocrystal and its directors and officers because at that point, Biozone no longer existed. Which subpoena demand would have called for insider trading of stock? There was a request, and these are all laid out on pages 25 and 26 of our opening brief, but there was a request for information related to purchases and sales of Biozone stock after Biozone became known as Cocrystal. That's request number eight in the subpoena. Yes, ma'am. And so that alone is sufficient. And that alone is all you usually have. But, of course, here we actually do have some additional information from the SEC that was relayed to Cocrystal's defense counsel, who said, hey, we're concerned about misrepresentations that the company may have been making and concerns about, you know, the company's stock being used. Let's walk together at trial. Let's assume for the purposes of this conversation that, in fact, it was properly cited for the district court to consider. You would agree that it would be hearsay for the lawyer who heard the SEC lawyer make those statements? That would be hearsay? I don't, Your Honor, because we're not actually submitting that for the truth-of-the-matter asserted. Oh, but you are, because you're saying the SEC was investigating us. See? Listen to what this word said. That's for the truth-of-the-matter asserted. We're actually asserting that the SEC made those allegations. The SEC made those allegations to Cocrystal's defense counsel by stating them to him, which is not actually for the truth-of-the-matter asserted. It doesn't matter whether the SEC was actually investigating. It doesn't matter. I don't think it does. It doesn't matter whether the SEC, whether those were true, the allegations, or whether the SEC was actually concerned about it. It's the fact the allegations were made that made Cocrystal have to defend against them. Okay. How are you getting that into evidence? You're going to have the lawyer who talked to counsel from the SEC, and he's going to relay those words? I know you rely on the public records exception. I don't see a case that supported the admissibility of an oral statement by a government lawyer to another lawyer in an insurance coverage case that the public records exception applied. Do you have any other exceptions to the rule that would get that into evidence? Yes, absolutely. I mean, I think it would get in, first of all, through defense counsel, who would explain that these are the allegations that relate to him. Uh-huh. So that's hearsay. But second of all. Unless it's not for the truth-of-the-matter asserted. And I really don't think it is. But if it were, they're still admissible at trial through the residual exception because this is the best evidence that we can possibly give of what the SEC is investigating. Because the SEC certainly isn't joining you at trial. Would you agree? The SEC is likely not going to show up to testify at trial. And there's sufficient guarantees of trustworthiness. Why would this SEC representative have been misleading the person defending him? Well, couldn't the judge say, well, the person who's relaying what the declarant purportedly said might have a little bit of an interest in hearing things in a particular way because he's trying to gather facts to present to the insurance company and say, yo, you've got to give me coverage, right? Well, so first of all. And so I'm not sure it would get in under the residual exception. Well, he would be there for cross-examination, of course. And actually, he was getting paid. So frankly, I don't know that he had a significant personal interest in misrepresenting him. With the SEC counsel, would SEC counsel generally be called on to testify at trial? I think likely not. You know, there are certain situations where this court has required the agency to come and testify with respect to their investigations. But those are usually under very different circumstances where, like, targets are concerned. The investigation itself is improper. Not to say she couldn't possibly show up. She's still at the, the declarant is still at the SEC. The Liberty, sorry, defense counsel had indicated that she was willing to speak with Liberty with respect to these. Usually when you call the SEC and say, about your client, let's, and they'll just say, we're investigating. We're not telling you one way or the other. When we're done, you'll find out. Now, this person, if called on at trial, what could they say that would be helpful to get you past the hearsay problem? Well, presumably what they told defense counsel, which is, these are some concerns the SEC has. We need information from you, Coe Crystal, to allay those concerns. And in fact, Coe Crystal did. Because ultimately, there weren't claims brought against Coe Crystal. It was a successful defense of that portion of the investigation where they were able to demonstrate that they hadn't done anything wrong. So those, the requests and the SEC statements both support there being allegations by the SEC that fall within coverage here. And then the last issue is giving too much weight to those claims that were made by the SEC in its enforcement action. I mean, that court honestly gave nearly dispositive weight to that. And that's just flawed logic. Because if you think about the Venn diagram, right, you know, you can have what the SEC is investigating, but then within that, a smaller subset of the claims they actually found actionable. So, and here they said, according to this email statement, they said they were looking into Coe Crystal. I don't have any more questions on the main issue. I do want to make sure to get to the larger settlement. I don't have anything further on the SEC investigation part. I do have a question about notice of circumstances. Talk about notice of circumstances. Yeah. You raised it here, but it wasn't raised in the district court. Would you say that that has been not preserved? Well, as an initial matter, to the extent that you find any portion of the SEC investigation related to Coe Crystal, the summary judgment has to be reversed, because the district court found that there was no covered allegations. And once you have that, clearly there's no question here that the SEC, the securities law seems to relate back to the ---- Are you abandoning reliance on notice of circumstances? No, not at all, Your Honor. Then what is your authority to, why should we permit you to argue that to us today and then try to bring it back to the district court when you didn't raise it in the only raised it here on the first instance? Absolutely. Well, it's a very close argument to what was related to what was presented to the district court, and it's also an alternative argument. So, frankly, that's keyed off of the district court's decision. The district court held, hey, there's no covered allegations here. It's a totally different provision of the insurance policy. One is in Section 8. One is in Section 9. Notice of circumstances, and frankly, I think you all were on notice of it, and I'm speaking about you personally, but your client was on notice because notice of circumstances is what Liberty relied on for some of it. So tell me why you should be permitted to even raise the notice of circumstances provision, and then I'll turn it over to my colleagues. Well, again, in addition to being CLOSA-related, the ---- CLOSA-related is a different provision. Notice of circumstances is something else.  They're designed to set these policies up so that all the claims that relate to one claim or one incident that fall within the policy period pull in any future claims. So it's not really that different when you're talking about whether you're giving a notice of claim or notice of circumstance. I mean, here, Liberty accepted the claim of the notice of circumstance, then changed its mind and accepted it as a claim, and then switched back and said, oh, no, it's not a claim anymore. Well, the notice still has to be something. Like the notice was still given. There's no third option. There's no dispute about that. So not all ---- so that argument, I think, actually is pretty closely related. We didn't intentionally waive it. And then, you know, in addition, we asked that you would give your discretion to consider it. It's a pure question of law. It relates to a common DNO issue. And Liberty won't be surprised or prejudiced. As you said, they mentioned notice of circumstances themselves, and they know this is how these policies work. Otherwise, Co-Crystal would be stripped of its coverage because it can't put the claim in a different policy period, even though Liberty knows that's how its policy is intended to be answered. I want to ask about the larger settlement rule. So should we address that or kick it back to the district court? And if we address it, at page 42 of your opening brief, you quote what you claim is the only provision relating to allocation. But the very next provision of the plan says allocate costs, quote, if there can be no agreement. So, you know, in this battle between cases, doesn't this make this case more like Verizon, which your friends on the other side cite, than Arch Insurance, the case on which you're relying? No, Your Honor, because in Verizon and those similar cases, there was some standard in the policy that actually said, hey, you have to allocate based on the relative exposure between the different parties. Here we don't have any standard. It just says, hey, try to agree. If you can't agree, it will be decided. With respect to the question of the larger settlement rule, I think that gets kicked back to the district court. We're not saying that to the extent that this found that there's some needs to be some allocation between covering and uncovered claims. Liberty shouldn't be given the opportunity to prove its burden, which is to show that there was an increased amount of defense costs. Was larger settlement rule raised in the district court? Larger settlement rule I don't believe was raised in the district court. Good morning, Your Honors. Ron Shiller for Liberty Insurance. I'm just going to start by addressing some of the questions you asked a minute ago. One question at the outset. When do we consider the duty to pay defense costs? The policy requires that defense costs be advanced, as Your Honors are familiar with. We consider them generally at the outset of the request? In other words, was it in 2015 when I guess they initially made the request? The advancement requirement means that we don't have to wait, meaning Liberty, doesn't have to wait until the underlying matter is completely over. This policy didn't say, and some do, that you must advance defense costs within 60 days of presenting bills. And then we will pay what we agree to and we will dispute the balance or not, so long as we reserve the right to recoup, which we did here. This policy didn't say that. So under the law, under the law of most courts and jurisdictions, advance means we don't have to wait until the end of the resolution of the underlying matter, which would suggest that you should do it sooner than later when you have the reasonably available bills. Now, in this case, there was a 14-month delay from, I guess, November of 15 to roughly January of 17 or something like that. Is that correct? You may be right, Your Honor. I wasn't focusing on that. They don't have a claim about that. Actually, it was October of 15, I think. So what was the – initially you declined and then you eventually – the insurance company said, okay, we will pay it. What was the deciding factor that went from no to yes? The claims handler, Ms. Caliendo, decided to treat it as a claim and pay them. Subject to reservation of rights, she said in her email, she didn't send that separate letter. There was no pushback on her email that said, subject to reservation of rights, we'll pay them. The policy provided for a right to recoup. So to be candid, no harm, no foul. They were dealing with a substantial company. They could advance the funds. If it turned out they weren't due, they'd have a right to get them back, which was part of the suit we filed in the District of Delaware. So that's the short answer, Your Honor, as to what was in Ms. Caliendo's state of mind other than what I read from the record and just said to Your Honor. She was not deposed, and I wouldn't speculate. In fact, to be clear, because the court was asking a lot of questions about what the evidence is, the only evidence that's not utter double hearsay is the subpoena. And this is not unusual, by the way. In the four Delaware trial court decisions that are cited by the other side, every single one of them involved a court looking at a CID, a civil investigative demand, a subpoena, a letter request, and making a decision comparing the terms of the policy and what the policy required to the document. And by the way, Coe Crystal agrees with this. The cases are not uniform. In fact, if you line them up, there are two that found that there was coverage and there were two that found that there wasn't coverage. It seems that this case is a lot like the Conduit case that was decided by the Delaware Superior Court in 2019. I respectfully would say the difference, Your Honor, is Conduit involved a Texas Attorney General, a civil investigative demand, as I recall, that actually cited a criminal statute went after Conduit for its Medicare or Medicaid dental reimbursement practices, told in the document request, I'm sorry, in the subpoena, that this was an investigation for a violation of law. None of that occurred here, Your Honor. And, you know, I do want to point out one thing because we cited the Musselfarm case, which was a Tenth Circuit appellate decision. Because that case- It's also not even a presidential decision from the Tenth Circuit, right? It's also an entity that was listed on the subpoena, right? Musselfarm? I'm sorry, what? An entity listed on the subpoena in that case, right? Yes, it was. That seems like a pretty different set of facts. We cited it for the reason that it dealt with whose wrongful act it was. And it obviously was construing exactly the same language. The way I read your brief is you were focusing on whether it captured a wrongful act of an insured. That's correct, Your Honor. You weren't really fussing on appeal whether a subpoena could constitute a claim. That's correct. Okay. We didn't take a position on that, Your Honor. Okay. I mean, I could argue to the court- You don't need to. We're good. Okay. We didn't think it was necessary to, in part because the district court decided that regardless of whether it was a claim, it didn't refer to a co-crystal wrongful act. And that matters here, Your Honor, because to step back and understand the procedural situation we're in right now, there were a series of policies. There was a prior policy issued to Biozone, which is not at issue in front of Your Honors. And, by the way, a notice of circumstances was provided to that prior policy provided to Biozone for the pump and dump scheme that started in 2010 or 2011 and that was the focus of this subpoena. And I can go into that more. Second, you had a decision by Biozone and its successor, co-crystal, and I'm not using successor in the legal term that we all know, but I'm using it because colloquially that's what the SEC referred to it as. It said formerly known as or its successor. And if you look at the subpoena and say, well, why was it asking co-crystal for documents? Because it assumed co-crystal had the Biozone documents. Yeah, but the subpoena also had a date range for which information needed to be sought, which post-dated the merger. Yeah. And so it also sought activity by co-crystal in its capacity as co-crystal, as we discussed with your colleague on the other side, in item number eight, among other things. So I don't know that it could be read, and it seems like how the district court might have understood the subpoena is only looking at co-crystal as a custodian of records for its predecessor. And, again, I use that as a term of chronology, not a term of law. Well, two quick responses to that, Your Honor. One is the burden is on co-crystal to establish that this actually establishes not only a reference to co-crystal, but a wrongful act in the capacity of co-crystal. Great. Let's talk about that. So they point to this email that memorializes a conversation with the SEC lawyer. Nowhere in the district court docket did I see an application to strike, move to suppress, bar admissibility of that email. Would you agree, then, you have waived that argument as at least for its admissibility on summary judgment? I'm not talking about trial only in summary judgment when there was no application to preclude it. No, because the reason that Judge Bevis raised, which is there was no use of that email or the affidavit in support of their motion for summary judgment. And it was attached and referred to in opposition to ours. The district court said, I am treating these two motions separately. They never, that is not in the record on their motion for summary judgment. But Liberty offered that proactively as part of your motion practice. So why should we be adjudicating its admissibility when it was relied upon by the cost movement? It wasn't relied upon to prove that there was a wrongful act. Well, let me step back, Your Honor. It wasn't part of their motion for summary judgment. Secondly, Your Honor, it obviously, we did not move to say it was not, we didn't have to move to say it was inadmissible. Then why did you submit it to the court in support of your motion for summary judgment? To show that they could not establish with admissible evidence and to frankly explain why Ms. Cayendo decided to treat it as a claim. But to be candid, Your Honor, you were asking questions about hearsay. It's actually double hearsay. But there's another problem. Even if you look at the declaration of Jonathan Green, who is the Arnold and Porter lawyer who represented Coe Crystal and was trying to get it coverage at that time, as Your Honor appropriately said, even if you look at the declaration, the declaration doesn't even say and the contents of that e-mail are true and correct. His declaration does not back up the e-mail. His declaration does not swear to the contents of the e-mail. All his declaration says is I couldn't get the SEC formal notice of charges and I had a conversation attached as a true and correct copy of my e-mail. He never says and the contents of that e-mail are accurate. And if you look at what he does say, he doesn't even say that he was told that Coe Crystal was the subject of or the target of the investigation. And, in fact, his e-mail refers to their investigation as being targeted to Biozone. But there was no challenge to that declaration before the district court, right? No one moved to strike his declaration, correct? Nobody moved to strike his declaration, which, again, was not cited in support of their motion. Your Honor, are you talking about the January 2015 e-mail from Jonathan Green to Carla Caliendo? Yes, I am. Okay. There are two versions in the appendix. I'm looking at the one of J293, but it doesn't matter. So let's talk about what in the language of it you think is not sufficient. Sure. Okay, Your Honor. Do you want me to walk you through it real quick? Yeah. Okay. It says, It's in the second sentence in the first paragraph, in subsequent conversations. Between the SEC attorneys handling the investigation and Coe Crystal's outside counsel, the SEC attorneys indicated that they had concerns regarding representations the company had been making and its relationship with certain individuals. And these concerns go to the bona fides of the company and the legitimacy of its operations. But then if you look at the next paragraph, he says, again, this is assuming the truth of this, which is not something that's been sworn to in the district court, In January 2016, the SEC issued subpoenas requesting the production of documents to Mazza and Keller, former officers and directors of Biozone. Neither of them was ever an officer or director of Coe Crystal. There's no evidence that they were. Now, I do want to point out, there is a reference in the district court's decision that assumed that they also became officers and directors of Coe Crystal. They did not. And we said that in a footnote in our district court brief. They were solely Biozone pharmaceutical officers or directors. He then says, and he, Biozone. He says, Biozone was acquired by Coe Crystal on a reverse merger and therefore is a predecessor of Coe Crystal. Each of Mazza and Keller have made indemnity claims against Coe Crystal as successor to Biozone. That's why he's talking about it. And the context here is Coe Crystal has the documents and these employees of Biozone are demanding that they be indemnified and defended as a successor, not for Coe Crystal's own conduct. Okay. You could read the second paragraph into the first. But in the first one, before we've ever talked about Biozone, the SEC's concern is about the bona fides of the company, the legitimacy of its operation, the possibility of its company stock was being used for manipulative purposes. In that context, the company we're talking about, the only company that's been introduced so far is Coe Crystal. Yeah, except he doesn't define Coe Crystal. But the subpoena makes clear by frequent references to Coe Crystal, formerly known as Biozone, that what they're focusing on and what, I mean, we don't look at what happened years later. But we do know, and there's no evidence. But let's talk about the subpoena. Let's go to the language of the document requests. This is JA 509, 511, and 513, I believe. Yes, I have it in front of me. May I draw your attention to the most probably relevant requests, which counsel for Coe Crystal mentioned, referred to in passing are 31 and 32, all documents and communications between Biozone and the following entities in 31. And then it's, you know, A through J. But all of them are Biozone communications. In 32, all documents and communications between Biozone and the following individuals. Let's take a look, though, at Items 8 and 1 and 5 and 24, 25, and 28. But most, we'll use Item 8, all documents concerning the purchase and sale of Biozone stock by Biozone directors, including but not limited to after Biozone became known as Coe Crystal. Number one has the same proviso at the end. Right. And also considering the time period for which documents were sought post dated the conclusion of Biozone's life. And that's their whole argument, is that this includes the later time period. But understand the SEC wanted documents that related to the pump and dump scheme whenever those documents were created. You can have subsequent documents referring to past conduct. He read that narrowly. But I think it would be malpractice for a lawyer advising them on how to respond to these document requests to say, oh, no, what they really mean is just Biozone. Let's withhold everything else during that time period. It would be malpractice not to read this as broadly as it appears on its face. But I agree that if you're a cautious lawyer, you're going to turn over everything referring to Biozone, even if it was created by somebody who later became an employee of Coe Crystal. But I don't think that's inconsistent, Your Honor, with saying that this is about Biozone. I mean, this could have been turned over to the bankruptcy trustee. There was no Coe Crystal. And the bankruptcy trustee is asked to provide because he or she is the repositor of all such documents, all subsequent communications. That doesn't mean we're investigating the trustee for her. From where we are today, I don't know if it's either option A or option B. Option A is that in 2015, the SEC thought that Coe Crystal's officers and directors were involved with Biozone's fraud. Or in 2015, the SEC thought that Biozone committed fraud, and they just served that Coe Crystal subpoena because it had documents about Biozone. If I don't know that today, that sounds like something that has to be ferreted out at trial. Except for one thing. Well, two things, Your Honor. One is they have the burden of proof. And this is a trigger of coverage. And as everybody here knows, with the trigger of coverage, the burden is on the insured. Secondly, Your Honor, they did have an opportunity to do other discovery. They had an opportunity to take the on-on quarters. How do you prove that burden necessarily without going to trial? Well, first off, Your Honor, you take discovery. And, frankly, as an attorney who was in Conduit, Syracuse, I'm sorry, not Syracuse, Sycamore and Northrop and all the other cases they cite but one, what did we do in those cases? We took discovery. We took discovery of the people who talked to the government. We tried to take discovery of the government. In the Conduit case, we actually obtained an affidavit from the Texas AG because they wouldn't submit to a deposition. And rather than fight with us about that, in Texas court, they submitted answers to sworn discovery. You do those things. They elected not to. And I realize counsel sitting here is the fourth set of attorneys, and if you count brokers, sixth set of sophisticated representatives for Biozone and Co-Crystal to come here today. But they elected not to do that, Your Honor. They elected not to take any depositions. They elected not to buy the runoff coverage on the Biozone policy, even when they had provided a notice of circumstances to the Biozone former policy. They elected not to buy a subsequent policy for the subsequent lawsuits that were brought after our policy ended. And in this case. So it sounds like what you're saying, that all these cases, no matter what they are, can be resolved at summary judgment, and none of them really should go to trial. That's correct. And that's the other point I was going to make, and thank you, Your Honor, is that every single one of these cases resolved on motion for judgment on the pleadings or motion for summary judgment, with a court taking the policy and applying it and deciding who has the burden of proof and whether or not this states a claim for a wrongful act in the capacity of the insured. So what the district court did here is precisely what all of those cases have done. And frankly, Your Honor, to put a further gloss on it, because I am sensitive to the fact that you said when we were talking about Mussel Farm versus the Delaware cases, there is no Delaware Supreme Court case that contradicts that the burden is on them, that they had to present the evidence, and that it's for the court to apply undisputed facts. But what we do know is that in Delaware it seems to be very pro-coverage under an insurance policy. At least that seems to be the presumption or the theme. And in that context, with the information that we have here, not knowing what we don't know and we concede we don't know, I'm not sure how we necessarily decide that that has to be resolved at summary judgment rather than by a trial. Well, because in Conduit and Northrop and Syracuse and Sycamore, every single one of them, and some went for insurers and some went against insurers, Your Honor. The court made the decision as to whether or not, under the definition of claim for a wrongful act, the subpoena, the CID, or in Sycamore it was just a letter relating to the Jones Apparel merger, but whether or not that stated a claim or had stated enough for a notice of circumstance for other things to relate back. And just one other addition, and I know I'm out of time, Your Honor, but in one case, TIAA-PREF, which did not involve a CID, but it involved basically comparing admissions and pleadings to whether or not there was essentially a forfeiture or a consent issue. The president judge of the Delaware CCLD, that's the Superior Court Complex Claim Litigation Division, decided that that should be for a jury to hear, that she did not want to apply the policy language to what we contended were the clear and unambiguous terms of a policy that were not in dispute, I mean of a complaint, an amended complaint filed by the plaintiff's firm. We went to trial for three weeks on that. The jury ultimately did the right thing, I would say. It went up on appeal to the Supreme Court of Delaware, and the very first thing that then Chief Justice Trine said is, why is this in front of me? This is exactly the kind of thing that should have been decided by the judge and not submitted to a jury trial. That was his first question to me. And I politically said, I'm not saying I disagree with you, but Her Honor took the cautious approach, some would say overly cautious, and we tried a three-week trial. I think this is right because I think this is a burden of proof issue, and I think that the burden of proof here is on the insured, and the hearsay-double-hearsay failure to state even the Arnold and Porter's lawyer's opinion does not say what, and that's the only reason there was a reference, does not say what they wanted to say, but they didn't call him. So all we have is the subpoena, and even if you say the subpoena reaches subsequent time and events, they have the burden to show that it reaches a co-crystal wrongful act, and they haven't. Your Honor, I ran out of time. Yes, thank you. I wanted to address waiver and forfeiture, but I think Your Honors understand our position. We do. Thank you. Thank you, Your Honors. And first, just to give that cite that I did not have before with respect to the underlying briefing, and I apologize for not having that. I had thought it had been pretty clearly stated. In co-crystal's opening brief at the district court on page 7 in the fact section and also in page 20 in the argument section, there is reference to an explanation about the SEC subpoena having been presented to the court related to the scope of the SEC's investigation. You said it was the subpoena, not the e-mail? Yes, because I believe Judge Rupes had asked about the subpoena as well. I'd given previously the cite related to the e-mail. This is the one related to the subpoena. There was no reference to the e-mail. There was a passing reference to the subpoena. I'll go back and look at it in context. But, you know, it wasn't a lot to flag to the trial court what the theory was here. Understood. As you all have been discussing, you know, with my colleague, uncertainty in what is the scope of allegations is determined in favor of coverage. And I know my colleague was going through these various cases that have been decided on summary judgment. I was also involved in the Syracuse case and in the Northrop case and the NBIA case. And in these cases, it was found that the allegations triggered coverage. So even if you find one tiny portion of the investigation related to Coe-Chrystal's own conduct, that is enough to trigger defense costs. We don't want defense costs here, right? Defense costs coverage under the policy, and that's when the situation, unlike the attorney letter, which is a different situation, when it is appropriate to find summary judgment, we think there's enough to reverse and conclude that summary judgment, here summary judgment was entered in favor of the insurer. That's very different, right? Because that has to be supported by there being no allegations that could possibly trigger coverage in the SEC's investigation. Could it reverse and send us back for trial? So I think you can reverse and say, you know, that there's – I think you could reverse and say there's enough here to trigger coverage summary judgment in our favor. If not, I think you can reverse with directions to the district court to consider these various pieces of evidence because –  You don't think there's an issue of fact here concerning whether the subpoena asked for Coe-Chrystal's activities as compared to its status as a custodian of documents? I think there's enough to say. Even if 99 percent of the investigation only related to Biozone, all we need to trigger coverage, and again, that trigger of coverage then becomes an allocation issue with respect to defense costs, but it also becomes the trigger that brings back into this coverage period the securities lawsuits, all we need is a tiny percentage. And I think that there's enough here to conclude that, but we'd also welcome reversal to determine that at trial as well because there are questions here with respect – back to the scope of the SEC's investigation. I also just wanted to make one quick point with respect to something that my colleague has brought up a couple of times, which is a notice of circumstances under the prior Biozone policy. So prior to the merger, Biozone itself had a D&O policy in place. And Coe-Chrystal did give notice related to a press release relating to Muscle Farms' acquisition of most of Coe-Chrystal's assets. First of all, I'm not so sure that that actually relates factually, but that's irrelevant for at least three reasons. First, Coe-Chrystal couldn't give notice under Biozone's policy. That's the whole point of these policies when there's a big transaction is that you separate out which policy covers which entity. Second, the notice of circumstance would have had to have been made during the policy period, which we couldn't have done for the SEC subpoena because it didn't happen until the subsequent policy period. And also, just to note, Your Honors, Liberty rejected Biozone's notice of circumstance under the Biozone policy, and that is in the record at page 191, unless you had any more questions. Thank you all so much. It's been a pleasure.